# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 09-176V
### (To Be Published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| ANDREA CORTEZ, spouse and | * | Filed: March 26, 2014 |
| Representative of the estate of | * | |
| RENALDO CORTEZ, deceased, | * | Special Master Corcoran |
| | * | |
| Petitioner, | * | |
| v. | * | Attorneys' Fees; reasonable basis; |
| | * | recovery of fees by unsuccessful |
| SECRETARY OF HEALTH AND | * | petitioners; proof of vaccination |
| HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | | |

*Sean Greenwood*, Gauthier Houghtaling and Williams, Houston, Texas, for Petitioner

*Melonie McCall*, U.S. Dep't of Justice, Washington, DC, for Respondent

### ATTORNEYS' FEES AND COSTS DECISION[1]

On March 20, 2009, Petitioner Andrea Cortez, spouse and representative of the estate of Renaldo Cortez, her deceased husband, filed a petition for compensation under the National Vaccine Injury Compensation Program ("the Program").[2] Mrs. Cortez alleged that her husband

---

[1] Because this decision contains a reasoned explanation for my action in this case, I will post this decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." (Vaccine Rule 18(b)). Otherwise, the decision will be available to the public. (*Id*).

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10-34 (2012) (hereinafter

had suffered from Guillain-Barré syndrome ("GBS") as a result of his receipt of the trivalent ("flu") vaccination on January 26, 2006, and that his GBS ultimately caused his death on March 19, 2007. (*See* Petition ¶¶ 1-4). On November 29, 2012, the prior special master in the action dismissed the case after finding that Mrs. Cortez could not carry her burden of establishing that Mr. Cortez had ever received an influenza vaccination. (ECF No. 68).

On June 24, 2013, Mrs. Cortez filed a motion for attorneys' fees and costs. (*See generally* Pet'r's Appl. for Award of Att'ys' Fees & Reimbursement of Costs, dated June 24, 2013 (ECF No. 71) (the "Fee Application")). Respondent opposed the Fee Application on August 1, 2013, arguing that there was no reasonable basis upon which to file the original petition, thereby disqualifying her from an award of attorneys' fees. (ECF No. 73). The motion is fully briefed and ripe for decision.

This Fee Application presents the question of the propriety of an attorneys' fee award in a case in which Petitioner not only did not prove a fundamental element of her claim – that her husband received a "vaccination" as the term is defined in the Act – but also where, as the record reflects, the lack of evidentiary support for this element should have been evident before the case was filed. For the reasons discussed below, and after careful consideration of the facts, I deny the Fee Application.

**Background and Factual Allegations**

*Procedural History*

Mrs. Cortez filed her claim on March 20, 2009, with the assistance of her attorney, Mr. Sean Greenwood.[3] Petitioner asserted that on January 26, 2006, her husband had received a flu vaccination from Dr. Manuel Pena at his office in Bacliff, Texas. (*See* Petition ¶ 1). Included with the initial filing were affidavits from Mrs. Cortez and her son, Mr. Narcisco Garcia, but no other medical records. (*See* Pet'r's Exs. 1 & 2). Her petition goes on to allege that as a result of the vaccination, Mr. Cortez went to the hospital in April of 2006 complaining of chest pain and weakness in his upper and lower extremities and was later diagnosed with "acute Guillain Barré Syndrome." (Pet'r's Ex. 5 at 23). Mr. Cortez died on March 19, 2007, with the cause of death identified as GBS of uncertain etiology. (Pet'r's Ex. 12 at 1).

---

"Vaccine Act" or "the Act"). Individual section references will be to 42 U.S.C. § 300aa of the Act.

[3] As the billing records offered in support of the Fee Application indicate, Mr. Greenwood and his co-counsel, Ms. Katherine Gonyea, were together affiliated with three different law firms during the pendency of the action, and each has presented a separate invoice for services rendered in this case. (*See generally* Pet'r's Appl. for Award of Att'ys' Fees & Reimbursement of Costs, Ex. 1, June 24, 2013, ECF No. 71-1 (Invoices)). Mr. Greenwood, however, remained Petitioner's attorney of record throughout, in accordance with the rules of the Vaccine Court (*see* Vaccine Rule 14(b)(1)), although the billing records also reveal that his direct involvement in the case waxed and waned at various times in the nearly five years since its filing.

Early in the case Petitioner acknowledged to this tribunal the existence of fact questions regarding whether Mr. Cortez had ever received a flu vaccination. (*See, e.g.*, Order dated June 25, 2009 (ECF No. 9) (during status conference with Respondent and special master, "Petitioner stated that "there is no reference in the medical records documenting receipt of the flu vaccine by [Mr. Cortez]")). This admission occurred after Petitioner had filed an initial set of medical records, although she did not at that time certify that the medical records were complete.

Petitioner was therefore directed to investigate the factual issues in this case, and in particular to look for records or evidence supporting her allegation that Mr. Cortez had received a vaccination. In response to the special master's directive, Mrs. Cortez filed additional medical records on February 9, 2010 (ECF No. 19), and December 7, 2010 (ECF No. 32), certifying the completion of the filing of medical records as of March 1, 2011 (ECF No. 33). Filed with the Statement of Completion, among other things, were (a) the affidavit statements previously submitted with the Petition at its filing, (b) Dr. Pena's office visit notes from the January 26, 2006 visit at which the vaccination was allegedly administered, and (c) Dr. Pena's billing records for Mr. Cortez and his family.[4]

In May 2011, Respondent filed her Vaccine Rule 4(c) Report (ECF No. 37). In the Rule 4(c) Report, Respondent noted that there was still a complete absence of written contemporaneous documentation establishing that Mr. Cortez had received a vaccination in January 2006 (Rule 4(c) Report at 2 n.2). and that this absence made it impossible for Mrs. Cortez to carry her burden of proof under the Vaccine Act. (*Id.* at 12-13).

Respondent's Rule 4(c) Report underscored the need for Petitioner to develop the record with respect to the vaccination question. Key to resolving this question was interviewing Dr. Pena, whose handwritten treatment notes from 2006 regarding Mr. Cortez could not be deciphered. However, Petitioner indicated to the special master that she was having a difficult time gaining Dr. Pena's cooperation in the matter – and that in fact he had been ignoring a subpoena previously served upon him.[5] The special master therefore ordered Petitioner to confirm service of the subpoena on Dr. Pena and append to that proof any additional materials

---

[4] Both of the documentary exhibits had also previously been filed on June 12, 2009. (*See* ECF No. 7).

[5] Nowhere in the docket record is there evidence of such a subpoena ever having been approved for issuance by the special master. A July 19, 2011 Order (ECF No. 39) indicates that Petitioner's counsel informed the special master that "counsel for Petitioner has served a subpoena for Mr. Cortez's records on Dr. Pena, but . . . there has been no response." However, the docket references only one motion to issue a subpoena in this case, dated May 13, 2010 (ECF No. 24), and that motion solely requested approval for issuance of a subpoena directed at MSPRC to obtain account statements for Mr. Cortez. Moreover, Petitioner later filed the materials it obtained from MSPRC (*see* December 7, 2010 filing of records (ECF No. 32)), and there are no other motions for issuance of a subpoena listed on the docket prior to the July 19, 2011 Order.

3

obtained from Dr. Pena's office. (ECF No. 39).

Petitioner subsequently reported to the special master that she was still having difficulties obtaining Dr. Pena's cooperation with her discovery efforts. Later in August 2011, she reported learning that Dr. Pena, then 89 years old, was "sick and bed-ridden" (August 23, 2011 Status Report (ECF No. 43)) and that Dr. Pena could not be served with a subpoena because of the resistance of his care-givers. In a subsequent status report, however, Petitioner outlined a means of obtaining Dr. Pena's testimony that would be less intrusive – a deposition by written questions (*see* August 24, 2011 Status Report (ECF No. 44)).

In September 2011 Petitioner filed Dr. Pena's sworn answers to the 38 written questions posed to him relating to Petitioner's case. (*See* Dr. Pena's Answers to First Set of Written Deposition Questions, dated Sept. 23, 2011 (ECF No. 48-1 ("Dr. Pena's 1st Answers"))). In his responses, Dr. Pena initially indicated that he did not recall if he had administered a flu vaccine to Mr. Cortez (*id.* at 4) but asserted that he was not generally administering vaccines as of January 2006 when Mr. Cortez alleged to have received the vaccine. Dr. Pena's answers also stated that he had not been provided a copy of his relevant medical notes and records. (*Id.* at 5).

The special master scheduled a fact hearing for November 29, 2011 (*see* November 11, 2011 Order (ECF No. 52)) at which the two affiants would testify. The special master also ordered both parties to submit follow-up questions to be propounded to Dr. Pena intended to clarify ambiguities in his initial answers. The hearing was held as scheduled and the follow-up questions were drafted and (after review and input by the special master) submitted to Dr. Pena (*see* December 2, 2011 Notice of Filing (ECF No. 59)).

Dr. Pena answered the second set of written questions under oath on December 15, 2011, and his answers were filed on December 21, 2011 (ECF No. 63 (Dr. Pena's 2d Answers)). This time, with the benefit of access to his contemporaneous medical notes, Dr. Pena was able to clarify his initial responses as well as transcribe his handwriting from the relevant day of Mr. Cortez's treatment. Dr. Pena now stated that on January 26, 2006 he had given Mr. Cortez an injection of Lasix[6] intended to treat Mr. Cortez's high blood pressure (*id.* at 12) – not a flu shot as Mrs. Cortez had averred. Dr. Pena also reiterated his prior testimony that he was not providing flu shots to patients as of 2006, and identified where he recorded the fact of the Lasix injection in his contemporaneous medical notes. (*Id*).

Supplied with the above record, the special master was now in the position to make a fact determination. On August 31, 2012, the special master issued a fact ruling finding that Mr. Cortez had not received an influenza vaccination in January 2006. (*See* August 31, 2012 Ruling (ECF No. 66-1)). As a result, on October 31, 2012, Mrs. Cortez moved for a decision dismissing her petition, acknowledging that she would be unable to prove her claim. (ECF No. 67). The special master issued a decision dismissing the petition for insufficient proof on November 29, 2012, and judgment entered on January 3, 2013. (ECF No. 68).

---

[6] Lasix is a "trademark for preparation of furosemide." *Dorland's Illustrated Medical Dictionary* (32d ed. 2012) ("*Dorland's*") at 1007.

*Evidence Offered in Support of the Vaccination Claim*

Both affidavits offered in support of Mrs. Cortez's petition contained sworn representations that Mr. Cortez had received a flu vaccine. Thus, in her affidavit, Mrs. Cortez stated that "Renaldo received a flu injection on January 26, 2006 in Dr. Pena's office in Bacliff, Texas." (Cortez Aff. ¶ 2). Mr. Garcia similarly affirmed that "Dad got a flu shot in January of 2006. I was surprised by my Dad's decision to receive the flu vaccination because previously my dad and I had a discussion regarding vaccinations, specifically the flu vaccination and the reasons why one shouldn't receive such a vaccination." (Garcia Aff. ¶ 2). Mrs. Cortez's petition did not, however, cite to any other evidence that would have corroborated these statements, such as the actual medical records provided by Dr. Pena.

There were two other particularly probative pieces of contemporaneous medical record evidence also offered by the Petitioner. First, Mrs. Cortez offered Dr. Pena's medical notes from Mr. Cortez's January 26, 2006 visit. (Court Ex. 1001 at 22 (transcribing Pet'r's Ex. 4 at 4)). But such records did little more than confirm that Mr. Cortez had in fact seen Dr. Pena on that date, for the handwritten notes were largely indecipherable, making it impossible to ascertain from them alone if in fact a vaccine of any kind had been administered as claimed.

Second, Mrs. Cortez offered Dr. Pena's billing records. (Pet'r's Ex. 4 at 7 (ECF No. 19-4)). These consisted of a single hand-written ledger card that accounts for medical care provided to the entire Cortez family. (*See* Ex. 4 at 7). Each row reflects a bill for a particular visit, and includes the name of the family member, a brief description of the medical service, and the charge. This type of internal billing record does not include the same detail that an insurance billing record would usually include.

The January 26, 2006 visit was reported as below:

    01/26/06  Reynaldo  o.v. & inj. CK.

(ECF No. 63-1 at 38). As clarified by Dr. Pena in his written responses, "o.v." is an abbreviation for office visit, "inj." for injection and "CK" for paid by check. (*See* Dr. Pena's 2d Answers at answers to questions 37-38). Thus, this particular contemporaneous record of the purported vaccination at issue substantiates the giving of an "injection" – an act that medically encompasses the potential introduction into a body of a variety of substances, including, but not limited to, vaccines. (*See Dorland's Illustrated Medical Dictionary* (32d ed. 2012) ("*Dorland's*") at 941). Until Dr. Pena's clarification of how Mr. Cortez was actually treated, this document arguably corroborated Mrs. Cortez's claim, but did not itself resolve the issue of whether in fact Mr. Cortez had been administered a flu vaccine.

*History of Legal Representation*

Although this case was filed in March of 2009, Petitioner seeks attorneys' fees for work performed by her counsel beginning two years prior to the filing date. Mrs. Cortez first contacted Mr. Greenwood on March 2, 2007, when Mr. Cortez was seriously ill. (*See* Invoices (attached to

5

Fee Application) at 1). All told, the attorneys representing Mrs. Cortez in this matter spent approximately 70 hours working on it before it was ever filed – incurring $15,000.00 in fees, a figure representing more than 30% of the total sum in fees and costs requested. *See* Invoices at 1-6.

The billing records and actual evidence submitted in support of Mrs. Cortez's claim reveal that Petitioner's counsel had obtained all of the medical evidence most relevant to the vaccination question months before the filing of the petition. Thus, on September 25, 2008, Petitioner's counsel wrote to Dr. Pena in an "attempt to obtain a complete copy of all the medical records Dr. Pena has on file for . . . Renaldo Cortez," noting that counsel had made previous requests for the records, with no response. (Pet'r's Ex. 4 at 2). Counsel's correspondence specifically referenced the anticipated action in the "Vaccine Court." *Id.*

Dr. Pena's office responded on September 30, 2008 by sending counsel two separate facsimile transmissions (faxes). (*See id.*). Both faxes included a cover sheet setting forth Dr. Pena's office address and phone number. (*See id.*). The first fax included Dr. Pena's handwritten office visit notes for Mr. Cortez's visits on October 24, 2005 and January 26, 2006 plus x-ray results from the first visit. (*See id.* at 3-5). The second fax included Dr. Pena's billing records for both visits, as well as visits by other members of the Cortez family. (*See id.* at 7). All of these materials were therefore in the Petitioner's possession at the time the case was filed. And even though the attorney billing records reveal that Petitioner's counsel expended significant resources[7] looking for additional medical records, they never obtained more probative evidence on the question of whether Mr. Cortez had in fact received a vaccination than these two items.

*Analysis*

### I. <u>Availability of Attorneys' Fees to Unsuccessful Litigants</u>

Petitioners in the Vaccine Program who receive compensation are entitled to an award of reasonable attorneys' fees and costs. Even in those cases where compensation is denied, however, the special master may, in his or her discretion, award reasonable attorneys' fees and costs if the "special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." (§ 300aa-15(e)(1) (emphasis added)); *Silva v. Sec'y Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012) ("[s]pecial masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition"). Thus, absent a showing of *either* "good faith" or "reasonable basis" (since the two elements of this test are conjunctive), an application for attorneys' fees may be denied.[8]

---

[7] Petitioner's counsel's billing records show that they incurred $9,540.96 in costs from "Ross Reporting Services, Inc." before the petition was ever filed – approximately 95% of all costs incurred in the case. (*See* Invoices at 12). It is not evident from the Fee Application or the records offered in connection with it what the purpose was for such costs.

[8] In rendering decisions on the entitlement of counsel to fee awards, some special masters have observed that the Vaccine Act effectively creates "three classes" of litigants: (i) prevailing

Determining whether a petition was filed in good faith is a subjective inquiry, and can be established as long as the petitioner demonstrates an honest belief that she has suffered a compensable vaccine injury. *See Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993); *see also Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (petitioner is entitled to presumption of good faith).[9] This element is therefore the more easily established of the two. *Austin*, 2013 WL 659574, at *7 ("[d]ue to its subjective nature, the standard for good faith is very low"). Here, Respondent does not question Mrs. Cortez's good faith, and therefore I will dispense with further discussion of that element of the test for a fee award. (*See* Respondent's Opposition at 5 n.3 (ECF No. 73)).

The reasonable basis requirement, by contrast, involves an objective inquiry in which there is no such favorable presumption. *See McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303-04 (2011) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375 (Fed. Cir. 1994)) ("[t]he petitioner must affirmatively establish a reasonable basis to recover attorneys' fees and costs.")). An assessment of reasonable basis "look[s] not at the likelihood of success but more to the feasibility of the claim." *Di Roma*, 1993 WL 496981, at *1.

As stated in *Chuisano v. Sec'y of Health & Human Servs.*, No. 7-452V, 2013 WL 6234660, at *12 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), "[r]easonable basis is a standard that petitioners meet by submitting evidence." This is simply an alternative way to characterize the overarching fact that an unsuccessful petitioner has a burden of proof to satisfy before a fee award is appropriately granted. *McKellar*, 101 Fed. Cl. at 304. That burden can be carried only by submission of probative, persuasive evidence.

Although there is no explicit instruction from the Federal Circuit as to the precise evidentiary burden imposed on a petitioner attempting to establish reasonable basis, the *Chuisano* decision characterized that burden as "something less than a preponderance of the evidence" – and thus a standard lower than that applicable to a petitioner's ultimate burden in pursuing a Vaccine Act claim. *Chuisano*, 2013 WL 6234660, at *13. As to the kinds of proof that might be employed in meeting this burden, other special masters have looked for whether a

---

litigants, whom the statute mandates "shall" receive an award of reasonable fees and costs; (ii) unsuccessful petitioners, who "may" in the special master's discretion receive a fee award if the proper criteria are established, and (iii) unsuccessful petitioners who cannot demonstrate the proper criteria – historically a "very small" class of litigants. *Chuisano v. Sec'y of Health & Human Servs.*, No. 07-452V, 2013 WL 6234660, at *10 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (citing *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *7 (Fed. Cl. Spec. Mstr. Jan. 31, 2013)), *mot. for review filed* Nov. 25, 2013.

[9] Decisions of special masters and judges of the Court of Federal Claims constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). By contrast, Federal Circuit decisions are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. App'x 712 (Fed. Cir. 2004).

claim has support in the contemporaneous medical records, or in a medical opinion, or if the petitioner can demonstrate at least that "fundamental inquiries" were made in an effort to identify evidentiary support for the claim. *Melbourne v. Sec'y of Health & Human Servs.*, No. 99-694V, 2007 WL 2020084, at *6 (Fed. Cl. Spec. Mstr. June 25, 2007) (petitioner cannot obtain fee award once reasonable basis ceases to exist, based upon counsel's awareness that the medical record or expert opinion fails to support the claim); *Di Roma*, 1993 WL 496981, at *2.

The scope and sufficiency of an attorney's investigation into the basis for a petitioner's claim is highly relevant to determining if reasonable basis existed for filing the petition. This flows naturally from the fact that the Act expressly requires petitioners to include an affidavit and additional documentation with their initial filing. (§ 300aa-11(c)(1)(A) (Vaccine Act requires that a petition shall contain "an affidavit, and supporting documentation, demonstrating that the person who . . . died received a vaccine set forth in the Vaccine Injury Table")). Basic inquiries by counsel are therefore required prior to the filing of a petition under the Act. *See Di Roma*, 1993 WL 496981, at *2 (*citing Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258-59 (1991)). Attorneys practicing in the Program are expected to conduct a reasonable pre-filing investigation - including at a minimum an evaluation of the factual basis for the claim. *See Turner v. Sec'y of Health & Human Servs*., No. 99–544V, 2007 WL 4410030, at *7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). In determining the adequacy of the prefiling inquiry, special masters have considered the circumstances under which the petition was filed, including whether petitioner filed with the assistance of counsel, and if so, how much time before the filing deadline petitioner provided counsel for pre-filing investigation. (*Id.* at *6).

Although in the history of the Program special masters have tended to be "quite generous in finding a reasonable basis for petitioners" in granting fee awards in unsuccessful cases, that generosity wanes where it is evident that counsel failed to investigate sufficiently the facts underlying the claim. *Riley v. Sec'y of Health & Human Servs*., No. 09-276V, 2011 WL 2036976, at *3 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citation omitted); s*ee also Murphy v. Sec'y of Health & Human Servs*., 30 Fed. Cl. 60, 62 (1993) (affirming denial of attorneys' fees where contemporaneous records provided no basis for alleged injury), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995); *Di Roma*, 1993 WL 496981, at *3 (denying attorneys' fees and costs where "[m]inimal research and good sense should have indicated that th[e] case had no basis under the law").

In particular, special masters have denied fee awards in numerous cases in which a petitioner's claim was found to lack reasonable basis because the case was pursued despite the evident fact that the petitioner could never demonstrate that she had ever received a vaccine set forth on the Vaccine Injury Table. *See, e.g.*, *Schmidt v. Sec'y of Health & Human Servs.*, No. 11-410V, 2012 WL 1392632, at *1 (Fed. Cl. Spec. Mstr. Mar. 30, 2012); *Rydzewski v. Sec'y of Health & Human Servs.*, No. 99-571V, 2008 WL 382930, at *7-8 (Fed. Cl. Spec. Mstr. Jan. 29, 2008) ("[r]eceipt of a vaccine is an indispensable part of the Vaccine Program"); *Di Roma*, 1993 WL 496981, at *2 (petitioner could not recover compensation under the Program based upon vaccination administered to petitioner's mother that allegedly caused *in utero* injury to petitioner); (*see also* § 300aa-11(c)(1)(a)).

The specific facts of some of these analogous decisions are instructive. In *Schmidt*, for example, a petitioner sought to recover $14,325.00 in fees and costs in a case in which she

alleged injury as a consequence of receipt of the Pneumovax vaccine. Her claim was unsuccessful, due to the fact that Pneumovax was not a listed Vaccine Program vaccine. Because the special master found that the petitioner and her counsel had failed to exercise "basic diligence" by investigating whether injuries caused by that vaccine were grounds for compensation under the Program, there was no reasonable basis for filing the petition in the first place.

A similar result was reached in *Rydzewski*. There, the petitioner (who initiated the action as a *pro se* litigant) was administered hexabrix (an agent that creates contrasts when used during arteriograms and other procedures) in connection with a September 1995 cardiac catheterization procedure. 2008 WL 382930, at *1. Petitioner, however, alleged that she had received the hepatitis B vaccine and had been injured by it.[10] (*Id).* She filed her petition with no medical documentation, supporting it only with her own sworn testimony that she believed she had been given the hepatitis B vaccine (which, if true, is unquestionably the basis for a Vaccine Program claim). (*Id.* at *4-5). After the special master entered an order denying petitioner compensation, she filed a fee application seeking to recover approximately $9,000 in fees and costs. (*Id.* at *2).

The *Rydzewski* special master held that the petitioner lacked sufficient reasonable basis when she filed the petition, since, despite her *pro se* status, she could have confirmed pre-filing whether a vaccine had been administered to her by review of her own medical records. But he found "the lack of a reasonable basis [was] even more evident" after the time petitioner obtained counsel. 2008 WL 382930, at *7. This was because it was reasonable to assume that counsel understood that a successful Program petition requires the support of medical records and documentation establishing, among other things, this critical threshold component of her claim. (§ 300aa-13(a)(1) (Vaccine Act provides that the "special master or court may not make such a finding [of entitlement] based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion")). And yet, despite evidence (revealed in counsel's billing records) that petitioner's attorneys had conferred with their client about the status of the medical records collection – and in particular, had received some records documentation already collected by her – they proceeded with the case for several years (from 1999 until 2006) "without having persuasive evidence to establish the most basic of elements – that Ms. Rydzewski received a covered vaccine." (*Id.* at *8).

## II.    Has Petitioner Established Sufficient Reasonable Basis?

In opposing the Fee Application, Respondent argues that if Petitioner's counsel had promptly followed-up with Dr. Pena's office in 2008 to obtain his aid in understanding the relevant medical records when counsel first received them, counsel would have learned that Mr. Cortez never received a covered vaccine. (*See* Resp't's Opp'n at 7). Petitioner seems to rely on

---

[10]   The *Rydzewski* decision acknowledged that serious adverse reactions have been reported following the use of hexabrix. 2008 WL 382930, at *1. Hexabrix is not, however, a vaccine listed in the Vaccine Injury Table. (*See* 42 C.F.R. 100.3).

9

two pieces of evidence to rebut this argument.[11] First, Petitioner points out in her reply that both Mrs. Cortez and Mr. Garcia provided evidence of Mr. Cortez's vaccination through their affidavits, and that both also testified consistent with their prior sworn statements during the November 29, 2011 fact hearing. *See* Reply (ECF No. 75) at 1-2. Hence, Petitioner's counsel reasonably relied on those affidavits in pressing forward with her claim.

Second, Petitioner contends that Dr. Pena's billing notes legibly indicate that "an injection was given" to Mr. Cortez, although they do not specify the nature of that injection. (*Id.* at 1; *see also* ECF No. 63-1 at 38). This fact - coupled with the testimony contained in the two affidavits offered in support of the Petition - provided sufficient "reasonable basis," Petitioner argues, for counsel to proceed with the case even though they had not pinned down an answer to this issue at the time the Petition was filed in March 2009, or even later in the progress of the case.[12]

Petitioner's argument seems to confuse the reasonable basis prong of the test with the good faith prong. Reasonable basis is not measured by whether Petitioner or her counsel had a good faith belief in the facts as alleged. *See Di Roma*, 1993 WL 496981, at *1. Petitioner's good faith is not even in dispute. And the subjective good faith of Petitioner's counsel, in accepting that Petitioner correctly informed him of the facts, does not bear on the objective inquiry of whether Petitioner's claim had sufficient reasonable basis to have been brought in the first place. (*See id*). Counsel still have a duty to investigate a Program claim even if they reasonably find their client to be a credible individual.

But the more significant deficiency in Petitioner's reasonable basis argument is that it fails to answer, let alone address, an important question: why did Petitioner's counsel not communicate with Dr. Pena before 2011 and seek his aid in understanding the medical records? Admittedly, Dr. Pena's actual medical notes were difficult to read, as is evident from their face. This is why Dr. Pena's December 2011 transcription of his contemporaneous medical notes was so important to the conclusion (reflected in the special master's fact ruling) that Mr. Cortez never

---

[11] Petitioner's Fee Application is bare-boned to say the least - even when taking into account the lower-than-a-preponderance burden of proof standard governing the reasonable basis inquiry. Her reply in particular did little to address the Respondent's objections, and it is now too late to do so. *See* Vaccine Rule 8(f)(1) ("[a]ny fact or argument not raised specifically in the record before the special master will be considered waived . . .").

[12] In other reported attorneys' fees decisions, special masters have recognized that reasonable basis can change during the course of a proceeding, such that a claim that has sufficient reasonable basis at the time of filing or later can "lose" its reasonable status if certain evidence comes to light undermining the reasonability of the claim. *See, e.g.*, *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) ("when the reasonable basis that may have been sufficient to bring the claim ceases to exist, it cannot be said that the claim is maintained in good faith"); *Chuisano*, 2013 WL 6234660, at *21 (*citing Perreira*). Here, because I find that reasonable basis was lacking at the time the action was filed, there is no need to consider later points in the procedural history.

received a Table Vaccine. (*See* August 31, 2012 Ruling (ECF No. 66-1)).

The attorney billing records submitted in support of the Fee Application reveal that Petitioner's counsel had ample opportunity to determine the nature of Mr. Cortez's "injection" before the petition was filed. Counsel's representation of Mrs. Cortez began two years prior to the filing of the petition in March 2009. Because the relevant limitations period accrued no sooner than the filing date, Petitioner's counsel was under no immediate time pressure to act. [13] *See Turner*, 2007 WL 4410030, at *6.

Indeed, Petitioner's counsel still had adequate time to complete the pre-filing investigation as of September 2008, when Petitioner's counsel first obtained Dr. Pena's billing notes and medical report notes. There is no evidence in the record that Dr. Pena could not have been contacted in the six months before the limitations period ended. Dr. Pena continued to practice medicine until his retirement in May 2011 (ECF No. 63-1 at 6) and Petitioner's counsel possessed Dr. Pena's contact information, as the facsimile cover sheets used to transmit the medical records reveal. (*Id.* at 34). While there are suggestions in the record that Dr. Pena was elderly and perhaps not healthy enough to testify under oath when the parties contacted him in the second half of 2011, there is no evidence in the record suggesting he could not have been contacted before the petition was filed. A reasonably diligent advocate would at least have attempted to do so.

Petitioner's Fee Application could have attempted to explain these omissions. It is conceivable that a litigant might have trouble locating a witness under certain circumstances. I also do not fault Petitioner's counsel for failing to have grasped, at the moment Dr. Pena's medical records were obtained in September 2008, that there was a disparity between Mrs. Cortez's recollection and what the records actually showed. But beyond conclusory assertions that "reasonable basis" and "good faith" exist, there is nothing in Petitioner's Fee Application explaining why Dr. Pena could not have been asked about his treatment of Mr. Cortez some time before the filing of the petition. Once counsel (at the direction of the former special master) took the necessary steps to contact Dr. Pena, it took little time (from July of 2011 until December 2011 – less than six months) to obtain his clarification on Mr. Cortez's treatment.

## *CONCLUSION*

A threshold element of any Vaccine Program claim is establishing that the petitioner received a Table vaccine. Dismissal of cases that cannot meet this primary burden is a commonplace occurrence. *See Scanlon v. Sec'y of Health & Human Servs.*, 2013 WL 6922296, at *5 (Fed. Cl. 2013) (citing cases where petition dismissed because petitioners did not receive a

---

[13] Mr. Cortez presented to Clear Lake Regional Medical Center complaining of chest pain and weakness of the upper and lower extremities (Pet'r's Ex. 10 at 23-24) in April 2006 but died in March 2007. Mrs. Cortez subsequently contacted Mr. Greenwood that month. Counsel thus had two full years until the expiration of the filing deadline, which would have occurred by March 2009. (*See* § 300aa-16(a)(3) (providing a two-year statute of limitations for a petition alleging a covered vaccine caused the vaccinee's death).

vaccine covered by the Vaccine Injury Table), *mot. for review denied,* 114 Fed. Cl. 135 (2013).

Here, the record demonstrates that Mrs. Cortez's counsel either overlooked the absence of corroborating medical record evidence to confirm the testimony of Mrs. Cortez, or chose simply to rely on Mrs. Cortez's recollection in the hope that they would at some point uncover some evidentiary support – and that nothing changed even after being put on notice of this deficiency in her claim. More diligence on counsel's part would likely have uncovered this omission – and perhaps reduced the amount of time the parties, as well as this forum, had to devote to the matter. The risks arising from the failure to exercise such diligence are reasonably borne by the Petitioner and her counsel, who (given his experience with the Vaccine Program) should have been aware that proceeding with the claim despite the lack of corroborative evidence for a critical threshold element of it jeopardized the likelihood of his recovery of fees. Thus, and after careful review, I cannot in my discretion award attorneys' fees in this case.

Accordingly, Petitioner's motion for attorneys' fees and costs is **DENIED.**

**IT IS SO ORDERED.**

s/Brian H. Corcoran  
Brian H. Corcoran  
Special Master